1   JUSTIN X. WANG (CSB #166183)
    PEGGY A. SHIH (CSB #197545)
2   **BAUGHMAN & WANG**
    111 Pine Street, Suite 1350
3   San Francisco, California 94111
    Telephone: (415) 576-9923
4   Facsimile: (415) 576-9929

5   Attorney for Plaintiff
    Lin CHEN

6

7                    **UNITED STATES DISTRICT COURT**

8                  **NORTHERN DISTRICT OF CALIFORNIA**

                          **SAN JOSE DIVISION**
9

10  Lin CHEN                          )   Case No.: C 07-03147 RS
                                      )
11                  Plaintiff,        )
                                      )   **PLAINTIFF'S NOTICE OF**
12  vs.                               )   **MOTION AND MOTION FOR**
                                      )   **SUMMARY JUDGMENT**
13  *Michael Chertoff*, Secretary of the  )
    Department of Homeland Security;  )
14  *Robert S. Mueller,*              )
    Director of Federal Bureau of Investigation )  District Judge: Honorable Richard Seeborg
15                                    )   Date: October 10, 2007
                    Defendants.       )   Time: 9:30 a.m.
16  _____ )

17

18                       **NOTICE OF MOTION**

    TO DEFENDANTS AND THEIR ATTORNEY OF RECORD:
19
           NOTICE IS HEREBY GIVEN that this matter may be heard before the Honorable Judge
20
    Richard Seeborg, located at 280 South First St., Courtroom 4, 5th Floor, San Jose, CA 95113, the
21
    above referenced Plaintiff will and hereby  move the court for summary judgment on the ground
22
    that there is no genuine issue as to any material fact and that the moving party is entitled to a
23
    judgment as a matter of law. [1]
24
                             **MOTION**
25
           Plaintiff Lin Chen hereby moves this court for summary judgment pursuant to Rule 56 of
26

27  _____
           [1]Plaintiff requests that the Court continue the Case Management Conference scheduled
28  for September 26, 2007 at 2:30 p.m. to the same date of the hearing on Plaintiff's motion for
    summary judgment in order to conserve judicial resources.

    _____
    **Case No.:** C 07-03147 RS
    PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT          F:\Peggy\immigration\mandamus\CHEN, Lin\MSJ-final.wpd

the Federal Rules of Civil Procedure. This motion is based on this Notice, the points and

authorities in support of this motion, the complaint and documents attached thereto, and upon

such other matters as may be presented to the Court at the time of the hearing.

### STATEMENT OF RELIEF SOUGHT BY PLAINTIFF

Plaintiff seeks summary judgment in his mandamus action for the Court to enter an order

requiring Defendants to expeditiously complete the security clearances on Plaintiff's application

for adjustment of status and requiring the Citizenship and Immigration Services (CIS) to process

the cases to conclusion.  In addition, the Plaintiff prays that the Court grant such other relief that

may be just and appropriate, including costs, expenses, and reasonable attorney's fees pursuant to

the Equal Access to Justice Act, 28 U.S.C. § 2412 (1991).

### MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF FACTS

On August 13, 2003, Plaintiff filed an I-485 application to adjust  status to lawful

permanent resident with the San Jose Sub Office of the USCIS[2].  Plaintiff's Original Complaint,

Exhibit 1.  Plaintiff was interviewed on this application by the San Jose Sub Office on

December 18, 2003 and was issued a request for further documentation.  Plaintiff's Original

Complaint, Exhibit 1.  Plaintiff submitted the requested documents on December 22, 2003.

*See* Declaration from Lin Chen, Exhibit 1.  On January 9, 2004, Plaintiff received another notice

from USCIS requesting a translated document, which Plaintiff submitted on February 24, 2004.

Exhibits 1-2.  On September 9, 2004, Plaintiff received another fingerprint request, which she

complied with.  *See* Declaration from Lin Chen, Exhibit 1.  At this time, the FBI name check

appears to be the only reason for the delay in adjudication of Plaintiff' I-485 application.

Plaintiff's Original Complaint, Exhibit 3.  Plaintiff's I-485 application has now remained

pending for more than four years from the date of filing.

---

[2]On September 3, 2004, the San Jose Sub Office requested that Plaintiff submit color
photos and fingerprints to accompany the application.  Exhibit 2.

# ARGUMENT

Summary judgment is appropriate because the pleadings, when viewed in the light most favorable to the nonmoving party, demonstrate that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Cleotex Corp. v. Catrett*, 477 U.S. 317 at 323 (1986).

Plaintiff is entitled to relief under 28 U.S.C. §1361 and the Administrative Procedures Act as a matter of law. Under 28 U.S.C. § 1361, district courts have original jurisdiction to compel an officer of the United States to perform his duty. While the duty is often mandatory or ministerial, the duty may also be in the exercise of discretion. Although an officer may have discretion to adjudicate an application, it has a non-discretionary duty to process the application. Failure to perform such duties can be contrary to law for mandamus to lie. *Davis v. Shultz*, 453, F.2d 497, 502 (3rd Cir. 1971), *Naporano Metal and Iron Company v. Secretary of Labor, 529 F.2d 537* (3d Cir. 1976). Jurisdiction exists to challenge a U.S. official's authority to "take or fail to taken an action as opposed to a decision taken within . . . discretion." *Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997). Courts have also found jurisdiction under 28 U.S.C. §1331 and the APA. *Saleh v. Ridge*, 367 F. Supp.2d 508 (S.D.N.Y. 2005); *Wang v. Reno*, No. 01 Civ. 1698 (BSJ), 201 U.S. Dist. LEXIS 15577, (S.D.N.Y. Sept. 27, 2001).

The Administrative Procedures Act (APA) provides a cause of action when the government unreasonably delays action or fails to act altogether. 5 U.S.C. §§ 555(b) and 706(1). The APA states that federal courts can "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Agency action also includes the "failure to act." 5 U.S.C. § 551(13). The APA imposes a clear duty on Defendants to act on Plaintiff's application. Administrative agencies such as CIS do not have discretion to "avoid discharging the duties that Congress intended them to perform." *Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999). In addition, a general timing provision for agencies is provided within the APA at 5 U.S.C. § 555(b), which states that agency action should be concluded within a reasonable time. *See Forest Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir. 1999).

Recently, courts have concluded that subject matter jurisdiction exists over whether Defendants have unreasonably delayed in performing their non-discretionary duty to adjudicate I-485 applications. *Wu v. Chertoff*, 2007 WL 1223858, *3 (N.D. Cal. 2007); *Gelfer v. Chertoff*, No. C–06-06724 WHA, 2007 WL 902382, *2 (N.D. Cal.2007); *Singh v. Still*, 470 F. Supp. 2d 1067 (N.D. Cal. 2007); *Liu v. Chertoff*, No. S-06-2808 RRB EFB,*10 (E.D. Cal. August 22, 2007)(copy attached).

Mandamus is appropriate where the plaintiff has a clear right to the relief requested, the defendant has a clear duty to act, and no other adequate remedy is available. *Fallini v. Hodel*, 783 F.2d 1343 (9th Cir. 1986). 1) their claim is clear and certain, 2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and 3) no other adequate remedy is available. *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003). Plaintiff has a clear right to adjustment of status, the Defendants have a non -discretionary duty to provide that relief, and Plaintiff has no other adequate remedy available.

Section 245 of the INA and 8 U.S.C. § 1255(a) is the statute governing adjustment of status applications:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification under subparagraph (A)(iii), (A)(iv), (B)(ii), or (B)(iii) of section 204(a)(1) or 3. may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

It has been found that the INA establishes a clear right to the relief for adjustment of status applicants. *See Yu*, 36 F. Supp. 2d at 930-932; *Ahmed v. DHS*, 328 F.3d 383 (7th Cir. 2003); *Paunescu v. INS*, 76 F. Supp. 2d 896, 901 (N.D. Ill. 1999). Defendants have not provided any evidence contrary to Plaintiff's claim to have met all the statutory requirements for adjustment of status. Plaintiff's Original Complaint, Exhibits 1, 2. Thus, Plaintiff has a clear and certain claim for adjustment of status.

Defendants have a non-discretionary duty to adjudicate Plaintiff's adjustment of status

application. *See Yu*, 36 F. Supp. 2d at 925; *Agbemaple v. INS*, No. 97 C 8547, 1998 WL 292441 (N.D. Ill. 1998); *Elkhatib v. Butler*, No. 04-222407, 2006 WL 2333566 (S.D. Fla. 2005); *Aboushaban v. Mueller*, No. C 07-1280 BZ, 2006 WL 3041086 (N.D. Cal. Oct. 24, 2006). Defendants have a duty to simply process these applications. *Gelfer v. Chertoff*,  No. C–06-06724 WHA, 2007 WL 902382 (N.D. Cal. March 22, 2007). Furthermore, the Administrative Procedures Act (APA) also imposes a clear duty on Defendants to act on Plaintiff's application. §§ 555(b) and 706(1).

Plaintiff also states an APA claim against the FBI.  An agency's mandatory duty to act may be expressed in a single statute or from several Congressional enactments which, read together, clearly imply a mandatory duty.  *Kaplan v. Chertoff*, No. C 06-5304, 2007 U.S. Dist. LEXIS 22935, (E.D. Pa. 2007).  The *Kaplan* court, after careful analysis of several congressional schemes, including Pub. L No. 101-515, 104 Stat, 2101, 2112(1990) and 8 CFR §§ 316.4, 334.2, and 72 Fed. Reg. 4888-01(proposed Feb. 1, 2007), held that Congress has, by implication, imposed on the FBI a mandatory duty to complete the background checks.  As a result, the APA requires that the FBI complete the criminal background checks in a reasonable amount of time.

The CIS has failed to adjudicate Plaintiff's adjustment of status application within a reasonable time. Reasonableness of the delay is a factual determination to be determined on a case by case basis. *Yu*, 36 F.Supp. 2d at 953.  One can look to internal operating procedures or what the average adjudication time is for adjustment of status applications, such as processing reports.  The CIS' own processing dates for I-485 employment-based adjustment applications at the San Jose Sub Office as of May 21, 2007 is November 13, 2006 (See attached).  Congress, under the Immigration Services and Infrastructure Improvements Act of 2000, expects that immigration benefit applications be completed within 180 days. 8 U.S.C. § 1571 ("It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days . . .").

Six factors may also assist the Court in determining what is an unreasonable delay.  They include 1) time agencies take to make decisions must be governed by the rule of reason; 2)

where Congress has provided a timetable or other indication of speed it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; 3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; 4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing authority; 5) the court should also take into account the nature and extent of the interests prejudiced by delay; and 6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed. *Yu*, 36 F. Supp. 2d at 934. Furthermore, the source of the delay is another factor in determining whether a delay is unreasonable, such as the complexity of the investigation and the defendant's own participation in the delay. *Saleh*, 367 F. Supp. 2d. at 511-512; *Bartoloni v. Ashcroft*, 226 F. Supp. 2d 350, 354 (D. Conn. 2002).

Under the first *TRAC* factor regarding the timing of decisions by the rule of reason, the processing of I-485 applications and FBI name checks must be looked at in relation to the particulars of Plaintiff's case. In the instant case, Defendants have provided no evidence to explain the reason for the delay in the adjudication of Plaintiff's adjustment of status application or whether it has taken any action at all. Defendants have provided no explanation for the delay in Plaintiff's name check–when it was requested or what accounts for the delay in completion of the name check. In a recent mandamus case decided in this district, where a FBI name check caused a delay in processing, the Court granted summary judgment compelling the defendants to adjudicate the I-485 applications. *Singh v. Still*, 470 F. Supp. 2d 1067 (N.D. Cal. 2007). In *Singh*, the Court found that the CIS and the FBI had a duty to process the applications and the name checks within a reasonable time, respectively, regardless of who was responsible for the delay. *Singh*, 470 F. Supp. 2d at 1068.

Furthermore, the value and effectiveness of the FBI name check itself is being called into question. The 2007 Annual Report Recommendations by the CIS Ombudsman concluded that the FBI name check process was of limited value and may actually impose greater risk to national security:

Case No.: C 07-03147 RS

PLAINTIFF'S N... C:\Documents and Settings\peggy\Local Settings\Temporary Internet Files\Content.IE5\G3I9G5GG\MSJ_revised%5B1%5D[1].wpd

6

1
2
3
4
5
6
7

"The Ombudsman agrees with the assessment of many case workers and supervisors at USCIS field offices and service centers that the FBI name check process has limited value to public safety or national security, especially because in almost every case the applicant is in the United States during the name check process, living or working without restriction . . . Delays in the name check process actually prolong an individual's presence in the United States while the check is pending. In this sense, the current USCIS name check policy may increase the risk to national security by extending the time a potential criminal or terrorist remains in this country." *See* excerpts of Citizen and Immigration Services Ombudsman Annual Report to Congress June 2007, p.40.

8    Under the second *TRAC* factor, although there is no statutory directive from Congress
9   regarding a specific time for adjudication of the I-485 application, reasonable time can be
10  determined through other methods, including the use of *TRAC* factors. Guidelines can also be
11  gleaned via the USCIS' and FBI's own average processing times, which provide an indication of
12  the speed with which to determine reasonableness. The APA also provides a timing provision
13  which states that agency action should be concluded within a reasonable time. *See Forest*
14  *Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir. 1999); *Haidari v. Frazier*, 2006 U.S. Dist. LEXIS
15  89177, *9-11 (D. Minn. 2006). Lack of a specified deadline within the statute does not lessen
16  Defendants' duty to Plaintiff to adjudicate her petition. *Razaq v. Poulous*, No. C-06-2461 WDB,
17  2007 WL 61844, at *4 (N.D. Cal. Jan. 8, 2007)("The fact that neither the statute nor regulations
18  establish a specific deadline does not change the character of the duty itself . . . Congress
19  expected the executive branch to receive applications of this kind and then to 'adjudicate' them
20  to decision.").

21    The third *TRAC* factor considers delays with impacts on human health or welfare, as
22  opposed to those economic in nature, to be less tolerable. This coincides with the fifth TRAC
23  factor, which weighs the nature and extent of interests prejudiced by the delay. No evidence has
24  been provided to indicate there is a security concern in relation to Plaintiff 's case. Security
25  concerns are important but not as a guise for an agency to fail to carry out the duties required of
26  them. In this case, human welfare is implicated through the impairment of Plaintiff's right to
27  have her application adjudicated. *See, e.g. Singh*,470 F. Supp. 2d at 1070. Plaintiff has been
28  adversely impacted by being deprived of a decision for more than four years; by being unable to

1 plan or pursue a future course of action in the United States due to the pendency of the

2 applications, including the inability to take advantage of employment opportunities; by

3 repeatedly applying and paying for extensions of employment authorization and travel

4 documents; and being further delayed in their opportunity to apply for naturalization. *See*

5 Declaration from Lin Chen.

6       The effect of expediting the action on agency activities of a higher/competing authority is

7 the fourth *TRAC* factor. As a practical matter, expediting the delayed action on the I-485

8 application has routinely occurred in the past without seemingly to impinge on the agency's

9 activities of a higher or competing authority. In fact, many mandamus cases in this district have

10 been dismissed because the cases have been successfully expedited by the Defendants, reflecting

11 that no higher or competing authority was compromised when the court compelled the agency to

12 act. Moreover, if security concerns are a top priority, it would follow that name checks should be

13 completed as soon as expediently possible rather than be pending indefinitely. Plaintiffs are

14 simply requesting that the Court intervene to ensure established procedures are timely being

15 followed without any unreasonable delay.

16       The final *TRAC* factor states that the Court does not need to find impropriety in order to

17 find that agency action is unreasonably delayed. Indeed, the fact that Plaintiffs' case has been

18 pending for over four years is sufficient under this factor, even absent a specific motivation to

19 delay by the Defendants. Courts within this district have found delays alone sufficient to warrant

20 mandamus relief. *Aboushaban v. Mueller*, No. C 06-1280 BZ, 2006 WL 3041086 (N.D. Cal.

21 Oct. 24, 2006); *Singh v. Still*, 470 F. Supp. 2d 1067 (N.D. Cal. 2007); *Gelfer v. Chertoff*, No.

22 C–06-06724 WHA, 2007 WL 902382 (N.D. Cal. March 22, 2007)(more than two year delay to

23 be unreasonable as a matter of law). Courts in other districts have found cases where adjustment

24 of status applications have been pending for over 6 to 24 months unreasonable. *See Liu v.*

25 *Chertoff*, No. S-06-2808 RRB EFB,*18 (E.D. Cal. August 22, 2007)("[D]elay of more than two-

26 and-a-half years is unreasonable under the specific circumstances because there is no evidence in

27 the record demonstrating that the delay is attributable to Plaintiffs nor is there any particularized

28 evidence in the record sufficiently explaining the reasons for the extended delay")(copy

attached); *Galvez v. Howerton*, 503 F.Supp. 35, 39 (C.D. Cal.1980); *Paunescu,* 76 F. Supp. 2d at 901-02; *Agbemaple,* 1998 WL 292441; *Yu,* 36 F. Supp. 2d at 931-32; *Elkhatib,* 2006 WL 2333566.  *See also Salehian v. Novak,* No. 06-459, 2006 U.S. Dist. LEXIS 77028 (D. Conn. 2006) (application pending for more than two years); *Tjin-A-Tam v. United States Dep't of Homeland Sec.,* No. 05-23339, 2007 U.S. Dist. LEXIS 17994 (D. Fla. 2007) (application pending for more than three years); *But see Zahani v. Neufeld,* No. 05-1857, 2006 U.S. Dist. LEXIS 56416 (M.D. Fla. 2006) (application pending for more than three years); *Chaudry v. Chertoff,* No. 06-1303, 2006 U.S. Dist. LEXIS 66842 (D. Minn. 2006) (application pending for 17 months); *Jabr v. Chertoff,* No. 06-543, 2006 U.S. Dist. LEXIS 84588 (D. Mo. 2006) (applications pending for more than three years); *Mustafa v. Pasquerell,* No. 05-0658, 2006 U.S. Dist. LEXIS 8047 (W.D. Tex. 2006) (applications pending more than four years); *Safadi v. Howard,* 466 F. Supp. 2d 696 (E.D. Va. 2006) (applications pending for more than four years).

Thus, the balancing of the *TRAC* factors, as well as the specific facts of this case, indicate the Defendants have delayed unreasonably in adjudicating Plaintiff's adjustment of status application.  Plaintiff filed her adjustment of status application on August 13, 2003.  After Plaintiff's interview in December 13, 2003, over three years and eight months have passed with no further action taken on Plaintiff's case.

Mandamus relief in adjustment of status cases, such as this one, can be granted due solely to the length of the delay.  Plaintiff filed her case over four years ago, and the Defendants, have a duty to complete the adjudication of Plaintiff's adjustment of status application within a reasonable time.  Even without a statutory timetable, reasonableness of delay can be determined through various means, including the application of the *TRAC* factors and consideration of the reasons for the delay, complexity of the case,  and the agency's own average processing times.  Plaintiff has complied with the requirements for eligibility under the statute.  Mandamus relief is warranted here because there is no indication of good faith efforts by Defendants to alleviate the delay.  Defendants have not proffered any evidence demonstrating that Plaintiffs are not eligible for adjustment of status or that national security concerns are implicated specifically in relation to Plaintiff's case.  Absent the court's order, the applications are likely to continue pending without

decision, and thus, Plaintiff has no other adequate remedy available. The Mandamus Act and the APA provide a check on both the CIS and FBI for their failure to fulfill their duties, namely their failure to act within a reasonable time.

Because Plaintiff has a clear right to the relief requested, Defendants have a clear duty to adjudicate Plaintiff's adjustment of status application, and no other adequate remedy is available, the relief of mandamus is warranted. The evidence considered in the light most favorable to the government, demonstrate, as a matter of law, that Defendants have unreasonably delayed in the processing of Plaintiff's adjustment of status application.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court grant summary judgment in favor of the Plaintiff and a writ of mandamus be issued against all Defendants.

DATED: August 27, 2007                                    Respectfully submitted,


                                                          _____/s/_____

                                                          Justin X. Wang

                                                          Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

XIN LIU and HAU REN,

       Plaintiffs,

    v.

MICHAEL CHERTOFF, Secretary of
the Department of Homeland
Security; EMILIO T. GONZALES,
Director United States
Immigration Services; CHRISTINA
POULOS, Acting Center Director,
United States Citizenship and
Immigration Services; ROBERT S.
MUELLER, Director Federal
Bureau of Investigation,

       Defendants.

_____/

No. Civ. S-06-2808 RRB EFB

Memorandum of Opinion
and Order

    Plaintiffs, Xin Liu ("Liu") and Huan Ren ("Ren")
(collectively "Plaintiffs"), filed this action seeking to compel
defendants, Michael Chertoff, Secretary of the Department of
Homeland Security, Emilion T. Gonzalez, Director of the U.S.
Citizenship and Immigration Services, Christina Poulos, Acting

1

Director of the U.S. Citizenship and Immigration Services, California Service Center and Robert S. Mueller, III, Director of the Federal Bureau of Investigation (collectively "Defendants"), to adjudicate their I-485 applications for adjustment to permanent resident status. Plaintiffs assert they are entitled to a writ of mandamus compelling adjudication of their I-485 applications because Defendants have improperly delayed in processing such applications. Plaintiffs now move for summary judgment pursuant to Federal Rule of Civil Procedure § 56(c). For the following reasons, the Court GRANTS the motion.[1]

## I. BACKGROUND

On or about December 16, 2004, Plaintiffs, natives of China, filed I-485 applications with the United States Citizenship and Immigration Services ("USCIS") to adjust their immigration status to lawful permanent resident. Compl. ¶¶ 1, 4

---

[1]    Inasmuch as the Court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter. See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required). As a result, the oral argument presently scheduled for Wednesday, August 22, 2007, at 10:00 a.m., is hereby **VACATED**.

& 9.[2]   The adjudication of an I-485 application requires three background and security checks: a Federal Bureau of Investigation ("FBI") fingerprint check, an Interagency Border Inspection System ("IBIS") check, and an FBI name check.   Decl. of Wendy S. Clark ("Clark") ¶¶ 3-4.[3]

---

[2]   Plaintiffs' filed their I-485 applications concurrently with Liu's filing of an I-140 Immigrant Petition for Alien Worker through her employer, University of California, Davis; it was approved by USCIS on July 11, 2005.  Compl. at Exhs. 1-3. Liu is the direct beneficiary of the I-140 petition filed on her behalf by University of California, Davis, who seeks to employ her as an assistant professor of computer science.   Decl. of Monte Herring ("Herring") ¶ 3.   Ren, Liu's husband, is a derivative beneficiary of the same I-140 petition.   Decl. of Herring ¶ 3.

[3]   Defendants have submitted the declaration of Wendy S. Clark, the Acting Assistant Director with the USCIS' California Service Center ("CSC").  Decl. of Clark ¶ 1.  Ms. Clark attests that there are various security checks that must be performed — in order to enhance national security and ensure the integrity of the immigration process - before an application can be adjudicated.   Decl. of Clark ¶¶ 3-4.   The various types of checks that must be performed are explained in the "Fact Sheet," attached to Clark's declaration.   Decl. of Clark ¶ 4.   The checks include: (1) an IBIS name check; (2) an FBI fingerprint check; and (3) an FBI name check.  Fact Sheet, attached to Decl. of Clark.   The IBIS system contains records and information from over 20 federal law enforcement and intelligence agencies, including the Central Intelligence Agency ("CIA"), FBI, Department of State, Department of Homeland Security ("DHS") Customs and Border Protection and other DHS agencies.  Decl. of Clark ¶ 4.  The FBI records maintained in the name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement agencies.   Decl. of Clark ¶ 4.    Finally, the FBI fingerprint checks provide information relating to criminal background within the United States.  Decl. of Clark ¶ 4.

On June 30, 2006, Plaintiffs made an inquiry to the USCIS about the status of their applications and were subsequently informed that their applications had yet to be processed due to pending background checks. Compl. ¶ 11. To date, Ren's security checks have been completed but Liu's FBI name check remains outstanding. Decl. of Herring ¶¶ 5-6. As such, neither application has been adjudicated because Ren's application cannot be completely processed until Liu's application is approved as he is a derivative beneficiary. Decl. of Herring ¶ 5. Thus, both applications cannot be adjudicated until the FBI name check on Liu is completed. Decl. of Herring ¶ 5.

On December 11, 2006, nearly two years after submitting their applications, Plaintiffs filed the instant action seeking review of USCIS inaction in the form of improper delay in adjudicating their I-485 adjustment of status applications. Compl. ¶ 12. Plaintiffs now seek mandamus relief in the form of an order requiring Defendants to immediately and properly adjudicate their I-485 applications. Compl. ¶ 21.

## II. DISCUSSION

A.    Legal Standard

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

1  any material fact and that the moving party is entitled to

2  judgment as a matter of law."  Fed. R. Civ. P. 56(c).

3      The moving party bears the initial burden of demonstrating

4  the absence of a "genuine issue of material fact for trial."

5  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  A

6  fact is material if it could affect the outcome of the suit

7  under the governing substantive law.  <u>Id.</u> at 248.  A material

8  fact is "genuine," if the evidence is such that a reasonable

9  jury could return a verdict for the nonmoving party.  <u>Id.</u>  The

10  burden then shifts to the nonmoving party to establish, beyond

11  the pleadings, and by his or her own affidavits, or by the

12  depositions, answers to interrogatories, and admissions on file,

13  specific facts showing that there is a genuine issue for trial.

14  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986) (internal

15  quotation marks omitted).

16      "'When the party moving for summary judgment would bear the

17  burden of proof at trial, it must come forward with evidence

18  which would entitle it to a directed verdict if the evidence

19  went uncontroverted at trial.  In such a case, the moving party

20  has the initial burden of establishing the absence of a genuine

21  issue of fact on each issue material to its case.'"  <u>Miller v.</u>

22  <u>Glenn Miller Productions, Inc.</u>, 454 F.3d 975, 987 (9th Cir.

23  2006) (quoting <u>C.A.R. Transportation Brokerage Co., Inc. v.</u>

24  <u>Darden Restaurants, Inc.</u>, 213 F.3d 474, 480 (9th Cir. 2000)).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." Miller, 454 F.3d at 988 (internal quotation marks omitted) (citing Hunt v. Cromartie, 526 U.S. 541, 552 (1999)). "But the non-moving party must come forward with more than 'the mere existence of a scintilla of evidence.'" Miller, 454 F.3d at 988 (quoting Anderson, 477 U.S. at 252). Thus, "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Miller, 454 F.3d at 988 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986.)).

B. Mandamus and APA Jurisdiction

Defendants argue that this court lacks subject matter jurisdiction to review whether agency inaction has been

unreasonable because the pace at which I-485 applications are processed is within the discretion of the Attorney General.

1. Mandamus Jurisdiction

28 U.S.C. § 1361 provides, that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361 is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616. "A writ of mandamus is appropriately issued only when (1) the plaintiff's claim is 'clear and certain'; (2) the defendant official's duty to act is ministerial, and 'so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." Barron v. Reich, 13 F.3d 1370, 1374 (9th Cir. 1994) (quoting Fallini v. Hodel, 783 F.2d 1343, 1345 (9th Cir. 1986)).

2. APA Jurisdiction

"The APA authorizes suit by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 61 (2004); 5 U.S.C. § 702. "'[A]gency action' is

7

defined . . . to include 'the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act.*'" <u>Norton</u>, 542 U.S. at 62 (emphasis in original).  When an agency fails to act, the APA provides relief in the form of empowering a court to compel agency action unlawfully withheld or unreasonably delayed.  <u>Id</u>.

The APA provides relief for a failure to act insofar as it empowers a district court to compel an agency to perform a ministerial or non-discretionary act, or to act on a matter without directing it how to act, so long as the plaintiff has asserted a discrete agency action that it is required to take, if the agency unlawfully withheld or unreasonably delayed in acting on a duty.  <u>Norton</u>, 542 U.S. at 63-65; <u>see</u> 5 U.S.C. § 555(b) (Under the APA, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude the matters presented to it").  Should an agency not proceed as directed by 5 U.S.C. § 555(b), a court may hear a petition for a writ of mandamus compelling an agency to perform an "action unlawfully    withheld    or    unreasonably    delayed." 5 U.S.C. § 706(1).[4]  In short, a plaintiff may invoke subject

---

[4]    5 U.S.C. § 706(1) provides that a district court "shall compel agency action unlawfully withheld or unreasonably delayed."

8

matter jurisdiction under the APA, if he or she shows that a defendant (1) had a nondiscretionary duty to act, and (2) unreasonably delayed in acting on that duty.  <u>Norton</u>, 542 U.S. at 63-65.

Relief under mandamus and the APA is essentially the same when a petitioner seeks to compel an agency to act on a non-discretionary duty.  See <u>Independence Mining Co. v. Babbitt</u>, 105 F.3d 502, 507 (9th Cir. 1997).

C. Non-Discretionary Duty

The Immigration and Nationality Act ("INA") authorizes "the Attorney General, in his discretion," to adjust to permanent residence status certain aliens who have been admitted into the United States.  8 U.S.C. § 1255(a).[5]  However, as the government has conceded in at least two similar actions, <u>see</u> <u>Singh v. Still</u>, 470 F.Supp.2d 1064, 1067 (N.D. Cal. 2007) and <u>Gelfer v. Chertoff</u>, 2007 WL 902382, *2 (N.D. Cal. 2007), while its duty to grant an adjusted status is discretionary, its duty to *process* I-485 applications under § 1255 is non-discretionary.  See <u>also</u> <u>Aboushaban v. Mueller</u>, 2006 WL 3041086, *2 (N.D. Cal. 2006) (holding that the duty to adjudicate a plaintiff's I-485

---

[5]    Section 1255(a) provides that: "[t]he status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion *and under such regulations as he may prescribe,* to that of an alien lawfully admitted for permanent residence[.]"  8 U.S.C. 1255(a) (emphasis added).

1    application is non-discretionary). The Court is persuaded by

2    the reasoning of these cases.

3         As such, the Court concludes that it has subject matter

4    jurisdiction to consider whether the Defendants have

5

6    unreasonably delayed in performing their non-discretionary duty

7    to adjudicate Plaintiffs I-485 applications. See Wu v.Chertoff,

8    et al., 2007 WL 1223858, *3 (N.D. Cal. 2007) (holding that a

9    clear and certain right exists to have an immigration status

10

11   adjustment application adjudicated in a reasonable time frame);

12   Singh, 470 F. Supp. 2d at 1067 (plaintiffs seeking adjustment of

13   their legal status have a right, enforceable through a writ of

14   mandamus, to have their applications processed within a

15   reasonable time"); Gelfer, 2007 WL 902382 at *2 (the government

16

17   has a statutorily prescribed duty to adjudicate a petitioner's

18   immigration status adjustment application 'within a reasonable

19   time' under 5 U.S.C. § 555(b)).[6]

20

21

22   ────────────────────

23   [6]   See also Yu v. Brown, 36 F.Supp.2d 922, 932 (D.N.M. 1999)

24   (although no time frame is expressly defined in the INA [with
     respect to the adjudication of applications for a change of

25   status to permanent resident], "a contrary position would permit
     [Defendants] to delay indefinitely," and "Congress could not

26   have intended to authorize potentially interminable delays");
     Gelfer, 2007 WL 902382 at *2 ("[a]llowing the respondents a

27   limitless amount of time to adjudicate petitioner's [I-485]
     application would be contrary to the 'reasonable time' frame

28   mandated under 5 U.S.C. § 555(b) and, ultimately, could negate
     the USCIS's duty under 8 C.F.R. 245.2(a)(5)").

Defendants rely on 8 U.S.C. § 1252(a)(2)(B)(ii) to support their argument that this court lacks subject matter jurisdiction to review whether agency inaction has been unreasonable. Def.'s Opp. to Pl.'s Mot. for Summary Judgment at 5, n.1.[7] Defendants' reliance is misplaced. See Konchitsky v. Chertoff, 2007 WL 2070325, *3 (N.D. Cal. 2007) (finding that § 1252(a)(2)(B)(ii), titled, "Denials of discretionary relief," does not apply to a plaintiff seeking an order compelling adjudication of an I-485 application because he or she has neither been granted nor denied relief, but rather simply denied a decision). Moreover, because Defendants have a non-discretionary duty to process I-485 applications, § 1252(a)(2)(B)(ii) is not implicated as that section only divests jurisdiction of discretionary actions of the Attorney General or Secretary of Homeland Security. See id.[8]

_____

[7]   Section 1252(a)(2)(B)(ii) provides that "[n]otwithstanding any other provision of law . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of [asylum] under section 1158(a) of this title."

[8]   The court recognizes that there is a split in authority as to the discretionary nature of the pacing at which I-485 applications are processed, and that some courts have adopted Defendants position that courts have no authority to intervene when an immigration application remains unadjudicated for an unreasonable amount of time. See e.g., Safadi v. Howard, 466 F. Supp. 2d 696 (E.D. Va. 2006); Zheng v. Reno, 166 F.Supp.2d 875 (S.D.N.Y. 2001). The court however is unpersuaded by the

D.    Unreasonable Delay

Defendants argue that the delay in processing Plaintiffs' I-485 applications has not been unreasonable because it timely initiated investigations into Plaintiffs' backgrounds and the delay in processing such applications has been due to the complexity of the security checks, including the time-consuming nature of reviewing documents when common names like Liu are involved.    Defendants also argue that the delay has not been unreasonable because any inconvenience suffered by Plaintiffs from the delay is outweighed by the importance of completed background checks to national security.

"In cases where courts have addressed the specific issue of whether there has been unreasonable delay in processing an immigration status application, courts typically 'look[ed] to the source of the delay--e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding.'"    Singh, 470 F. Supp.

---

reasoning of these cases.  The court finds that the better rule permits judicial review of unreasonable delayed petitions, because without mandamus relief, USCIS could withhold a decision indefinitely in contravention of its non-discretionary duty to process such petitions.  See Okunev v. Chertoff, 2007 WL 2023553, *2, n.9 (N.D. Cal. 2007) (noting that there are too many important rights associated with permanent resident status (e.g., the right to travel abroad freely, the requirement of five years of legal permanent status prior to seeking naturalization, and the ability to petition to immigrate close family members) to allow the speed at which these applications are processed to go entirely unchecked).

2d at 1068.  What constitutes a reasonable time for adjudicating an immigration application depends on the facts of each case. Yu, 36 F. Supp. 2d at 935; see Yong Tang v. Chertoff, 2007 WL 1821690,*7 (D. Mass. 2007) (observing that while Congress has not been kind enough to provide a clear statutory benchmark by which the Court can determine when a delay is unreasonable under 5 U.S.C. §§ 555(b) or 706(1), this does not render 5 U.S.C. §§ 555(b) or 706(1) null, nor has it stopped courts from finding delays unreasonable in the past).

In assessing the reasonableness of agency delay, courts consider the following factors: "(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency

1    action is unreasonably delayed."   <u>Yu</u>, 36 F. Supp. 2d at 934

2    (internal quotation marks omitted).

3        In the instant action, Plaintiffs filed their I-485

4

5    applications on December 16, 2004.  As such, their applications

6    have been pending for more than two-and-a-half years.    The

7    applications remain pending due to Liu's outstanding FBI name

8

9    check.  USCIS contends that it cannot process Plaintiffs' I-485

10   applications until the FBI name check clears with a finding of

11   "no record."  Decl. of Herring ¶ 5.[9]   According to USCIS, FBI

12   name check requests are processed chronologically based on the

13   request date, and that only certain qualified applications can

14   be expedited.   Decl. of Clark ¶ 13.   Currently, USCIS is

15   processing I-485 applications for adjustment of status received

16

17   as recently as March 15, 2007, more than two years after it

18   received Plaintiffs' application.  Exh. 1, attached In Support

19   of Pl's Mot. for Summary Judgment.

20       While Congress has not set forth a statutory time limit for

21   adjudication of I-485 applications, the USCIS is required to

22

23   conclude the matters presented to it within a reasonable time.

24   <u>See</u> 5 U.S.C. §§ 555(b), 706(1); <u>see also</u> 8 U.S.C. § 1571(b) ("It

25   is the sense of Congress that the processing of an immigration

26   benefit application should be completed not later than 180 days

27

28   _____

     [9]   Ren's FBI name check cleared with "no record" on January 6,
     2006.

                              14

1  after the initial filing of the application . . .").
2  Additionally, as USCIS concedes, "[f]or most applicants, [it]
3  can quickly determine if there are criminal or security related
4  issues in the applicant's background that affect eligibility for
5  immigration benefits."    Decl. of Clark ¶ 10.    For example,
6  results of an IBIS check are "usually available immediately" and
7
8  the FBI generally forwards fingerprint check responses to USCIS
9  "within 24-48 hours."    Fact Sheet at 2, attached to Decl. of
10 Clark.  Also, most FBI name checks are resolved quickly and less
11
12 than one percent remain pending beyond six months.    Fact Sheet
13 at 2, attached to Decl. of Clark.  Cases pending longer than six
14
15 months generally involve "highly sensitive" and "complex"
16 information and therefore cannot be resolved quickly.    Fact
17 Sheet at 2, attached to Decl. of Clark.    According to USCIS,
18 although most cases proceed forward without incident, due to
19 both the sheer volume of security checks conducted and the need
20 to ensure that each applicant is thoroughly screened, some
21 delays are inevitable.    Fact Sheet at 2, attached to Decl. of
22
23 Clark.    For instance, some cases are so labor-intensive and
24 time-consuming that they can take years to resolve.    Fact Sheet
25 at 2-3, attached to Decl. of Clark.
26     Although there is no time frame imposed on Defendants to
27 process applications, the average times for processing
28 applications, and for conducting security checks, are a good

1  indicator of whether a delay is reasonable. See Konchitsky,

2  2007 WL 2070325 at *3. Here, the delay is due to the pendency

3  of Liu's FBI name check. Decl. of Herring ¶ 5. Defendants

4  attribute the delay in this regard to the large volume of

5  applications received and the extensive background checks

6  required to process them, especially in cases, like here, where

7  a common name like Liu is involved.[10]

8

9      While Defendants have made general assertions regarding the

10  delay, they have failed to point to any specific evidence

11  suggesting that: (1) the delay is attributable to Plaintiffs; or

12  (2) Plaintiffs' applications are particularly complex; or (3)

13  higher priorities exist necessitating the slow progress in

14  Plaintiffs' case. Moreover, Defendants have not pointed to a

15  single action taken to expedite the processing of the FBI name

16  check or to any particularized evidence explaining why

17  Plaintiffs' applications require an extended delay of more than

18  two-and-a-half years, far beyond the 180 days recommended by

19  Congress. See 8 U.S.C. § 1571. Defendants, for instance, have

20  not presented evidence showing that the FBI name check revealed

21  a match or some other positive (derogatory) information. Nor

22  have Defendants shown that this case involves a time-consuming

23

24

25

26  _____

27  [10]  Ms. Clark attests in her declaration that the CSC receives
    approximately 5,000 I-485 applications a month and currently has
28  30,000 I-485 applications awaiting adjudication. Decl. of Clark
    ¶ 6.

and labor-intensive investigation, or that it involves complex, highly sensitive information precluding a quick resolution. Instead, Defendants have simply made general assertions about the delay, including that security checks are complex and can be tedious when common names like Liu are involved. The court concludes that Defendants explanation is insufficient to render the delay experienced by Plaintiffs reasonable. Nor does it create a genuine issue of fact as to whether Defendants fulfilled their non-discretionary duty to adjudicate Plaintiffs' applications in a reasonable time.

Additionally, to the extent that Defendants invoke national security as a reason for delay, the court rejects this explanation given the length of delay and the fact that Plaintiffs have been living and working in the United States during the pendency of their applications. See Yong Tang, 2007 WL 1821690 at *8. Indeed, mere invocation of national security, without a particular explanation of how it caused delay, is insufficient to justify delay. Konchitsky, 2007 WL 2070325 at *5; Okunev, 2007 WL 2023553 at *2. Finally, to the extent that Defendants attribute the delay to the volume of applications received, the court rejects this explanation because, to hold

1   otherwise, would inequitably shift the costs of an over-taxed

2   system onto Plaintiffs.[11]

3       In short, while there is no specific time frame imposed on

4

5   Defendants to process I-485 applications, delay of more than

6   two-and-a-half years is unreasonable under the specific

7   circumstances because there is no evidence in the record

8   demonstrating that the delay is attributable to Plaintiffs nor

9   is there any particularized evidence in the record sufficiently

10  explaining the reasons for the extended delay. Moreover, this

11  unexplained delay is exacerbated by the fact that it has

12

13  occurred in the immigration arena[12] and has prejudiced

14  Plaintiffs.[13]

15

16  ──────────────

17  [11]   See Yong Tang, 2007 WL 1821690 at * 9 (observing that
    defendants cannot escape their statutory duty to adjudicate
18  applications within a reasonable time by simply asserting that
    they lack the necessary resources to process the applications.
19  A lack of resources is a policy crisis that is not the
    responsibility of Plaintiffs. Therefore, it would be
20  inequitable for defendants to shift the costs of an over-taxed
    system onto Plaintiffs); see also Konchitsky, 2007 WL 2070325 at
21  *5 (quoting Yu, 36 F.Supp.2d at 934) ("'[D]elays of a
    significant magnitude, particularly when they occur over
22  uncomplicated matters of great importance to the individuals
    involved, may not be justified merely by assertions of
23  overwork.'" )

24

25  [12]   Because delays in the immigration arena affect human health
    and welfare, they are less tolerable than those that implicate
26  only economic interests. See Singh, 470 F. Supp. 2d at 1069.

27  [13]   Delay in processing an I-485 application causes prejudice
    by affecting an immigrant's: (1) right to apply for citizenship
28  - as an application cannot be filed for citizenship until 5
    years after obtainment of permanent resident status; (2) ability

                                18

1   For the foregoing reasons, the court concludes that

2  Defendants delay in adjudicating Plaintiffs' I-485 applications

3  has been unreasonable as a matter of law. See Konchitsky, 2007

4  WL 2070325 at *5-6 (holding that absent a particularized

5

6  explanation justifying the delay, a more than two year delay in

7  processing an I-485 application was unreasonable as a matter of

8  law); Gelfer, 2007 WL 902382 at *2 (holding that a more than two

9

10 year delay in processing an I-485 application was unreasonable

11 as a matter of law where defendants simply asserted that the

12 USCIS was awaiting the results of an FBI name check and did not

13 point to a single action taken to further the processing of the

14

15 application or reason why the application was particularly

16 troublesome); Yong Tang, 2007 WL 1821690 at *7-9 (holding that a

17 nearly four-year delay in processing an I-485 application was

18 unreasonable where the government made representations that 90%

19 of background checks can be completed in approximately 30-60

20

21 days, and that, as of September 30, 2006, the wait time for

22 adjustment applications was 7 months); Yu, 36 F. Supp. 2d at 932

23 (holding that a two-and-a-half year delay in processing a lawful

24 permanent resident status application is on its face an

25

26 unreasonable amount of time to process a routine application and

27 requires an explanation).

28

to petition to immigrate close family members; and (3) ability
to travel abroad freely. Id. at 1070.

1    Accordingly, whether pursuant to mandamus or the APA,[14]

2  Plaintiffs are entitled to a writ directing USCIS to adjudicate

3  their I-485 applications expeditiously.[15]

4                    III. CONCLUSION

5      For the reasons stated above, the Court GRANTS the motion

6  for summary judgment.

7      IT IS SO ORDERED.

8
9      ENTERED this 22nd day of August, 2007.

10
11                              s/RALPH R. BEISTLINE
                                United States District Judge

12

13

14

15

16

17

18

19  _____

20  [14]   The Court recognizes that for purposes of mandamus relief
    (although not relief pursuant to the APA), Plaintiffs must also
21  demonstrate that they have no other adequate remedy available to
    them.  See Singh, 470 F.Supp.2d at 1071.  The Court concludes
22  that no adequate remedy is available to Plaintiffs.  See id.
    (finding that there is no other adequate remedy available to a
23  plaintiff awaiting adjudication of an I-485 application other
    than an order compelling the agency to act).
24
25  [15]   See Singh, 470 F.Supp.2d at 1072 (ordering adjudication of
26  plaintiff's I-485 application "forthwith"); see also Konchitsky,
    2007 WL 2070325 at *6-7 (concluding that it is proper to compel
27  USCIS to expeditiously process applications that are delayed due
    to a pending name check but that it is not proper to compel the
28  FBI to perform name checks in connection with adjustment of
    status petitions).

                                20

Exhibit 1

# Exhibit 1

Exhibit 1

Declaration of Lin Chen

I, Lin Chen, declare as the follows:

1.    I filed an application to Register Permanent Resident (Form I-485) at the USDHS San Jose District Office on August 13, 2003 after I married my U.S. citizen husband, Guobing Xiang.  Following the interview on December 18, 2003, I submitted the documents that the office requested on December 22, 2003.  On January 9, 2004, I received another notice from the office requiring a translation of one of the same documents.  I submitted this on February 24, 2004.  On September 9, 2004, I received a fingerprint notice, which I complied with.  My I-485 adjustment application has been pending for more than four years from the date of filing.  This delay has negatively impacted my life.

2.    I have trouble getting jobs in the U.S. while waiting for the results of my application.  Even though the immigration officer said that I could work without a work permit because of my K1 status and I am married to a U.S. citizen, he could not provide me a written confirmation to prove to the employers that I could work in the U.S. legally.  Without a written confirmation, no employer would hire me.  Therefore, I applied for employment authorization (EAD) in 2003.  It cost me about $120.  I renewed this card in 2004 and 2007.  The application fee for employment authorization rose to $175 in 2004 and $180 in 2007.  The application fee is now $340 (after July 30, 2007), which is much more expensive than before.  It also took a very long processing time that I missed out on some good job opportunities during the time that I was waiting for my EAD to be approved.

3.    My travel plans have also been severely limited.  In the past four years, I have only left the U.S. once for a trip to China in 2005.  I planned to visit my friends in Canada and other places to travel, such as the Caribbean, but I was afraid that I might not able to return when I came back from my travels without a green card.  In 2006, my mother in China was in the hospital because of cerebral hemorrhage.  I was not able to go back to China and take care of her because there wasn't enough time for me to get advance parole.

4.    I also faced unnecessary trouble when I applied for school enrollment.  I am now a student at the graduate school at Golden Gate University.  I also applied to San Jose State University.  When I tried to get into those two schools, I spent so much time trying to explain to these schools and prove that I am a resident in the U.S.

5.    The long pending time of my I-485 delays my application for naturalization.  I have some friends who came to the United States around the same time that I came.  They have become U.S. citizens already.

6.    In the past four years, I wrote letter to Congressman Mike Honda in Santa Clara, where I used to live, and Congressman Pete Stark in Union City, where I am living right now, to ask for help on my case.  I have called the USCIS customer service number several times for updated case status.  I was told that my I-485 application was under a FBI name check, so I also wrote a letter to the FBI.  However, I didn't get an answer from the FBI.

7.      My husband, Guobing Xiang, and I are very tired of the consequences caused by the delay. It's hard to describe the level of our pressure, worry, anxiety, and pain in the endless waiting in the past four years.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on August ___, 2007 in Union City, California.

_____
Lin Chen

Exhibit 2

# Exhibit 2

Exhibit 2





# DEPARTMENT OF HOMELAND SECURITY
## U.S. Citizenship and Immigration Services
### 1887 Monterey Road
### San Jose, CA. 95112

## SUBMIT THIS NOTICE WITH REQUIRED DOCUMENT (S) AND KEEP A COPY OF THIS NOTICE AND SUPPORTING DOCUMENTS FOR YOUR RECORDS

Applicant's Name:  LIN CHEN                         Date:  September 3, 2004

Refer to File #:  A95315518                         Officer:  Jimenez

A decision cannot be made until you submit the document(s) or information requested below. PLEASE MAIL the document(s) information to the above address within 87 days.  Pursuant to 8 CFR 103.2(b)(8), **you have 12 weeks from the date of this notice to comply.  Failure to do so may result in the denial of your application.**

Submit the following documents:  (*All documents containing language other than English must be submitted with a full English Translation*)

- [ ] Form I-130 Relative Alien Petition (Copy of original or completed duplicate no fee)
- [ ] Form I-693 Medical Examination AND Supplemental form to I-693 (all required Immunizations/Vaccinations)
- [ ] Form I-134 / I-864 Affidavit of Support  - From petitioner and/or Co-Sponsor     Sep20/04 601#36817 SNJ-MC
- [ ] Form G-325A Biographic Information                                             FP-Fee/FD258 $70.00
- [x] Fingerprints Referral for ASC at SNJ / SALINAS on:  **See attached referral.  $70 Biometric Fee payable to USCIS. Pay required fees at Cashier's Window,  1887 Monterey Rd., San Jose, CA  95112**
- [ ] Form I-601, Application for Waiver of Grounds of Excludability,  $195.00 Check/Money Order (payable to USCIS) **AND** Statement of Extreme Hardship from Petitioner (health, financial consideration, education, personal consideration, special factors, etc.).
- [x] Immigration specified color photos (3)
- [ ] Advance Parole (I-512) **OR** Copy of all foreign travel documents.
- [ ] Police clearances for **all jurisdictions** where you have **resided** for the **last 5 years.**
- [ ] Employment letter with company letterhead (business stationery) showing salary, start date, and position held) sponsor/and co-sponsor.
- [ ] Proof of marital union (rental agreement, deeds, insurance policies, utility bills, bank/credit statements, tax returns, and other evidence of marital union, etc.).
- [ ] **Certified Final Court Dispositions AND Conviction Documents, or** evidence of expungement of record, or "No Record" found from court of your arrest (s): _____
- [ ] Non-Availability of document certified by civil authorities for _____
- [ ] Original and a Copy of registered birth certificate for _____
- [ ] Original and a Copy of registered marriage certificate between _____
- [ ] Original and a Copy of registered FINAL divorce decree between _____
- [ ] Original and a Copy of registered death certificate of _____
- [ ] Two (2) affidavits regarding _____
- [ ] Copy of Naturalization Certificate for **OR** U.S. passport of: _____
- [ ] Complete copies of Income Tax Returns AND W-2 for _____
- [ ] A statement from an officer of the bank or other financial institution in which you have deposits, including deposit/ withdrawal history for the last 12 months, and current balance of: _____
- [ ] Other _____

- [ ] *Your application for permanent resident is pending for fingerprint clearance.  It will take approximately 120 days to receive the fingerprint result.  After 90 days of your fingerprint taken, please send us a copy of this notice to the address above.*

[x] *New Address (if you moved)*

_____

_____

For Warren Janssen, Officer in Charge




U.S. Department of Homeland Security
Washington, DC 20528

**U.S. Citizenship
and Immigration
Services**

1887 Monterey Road, Room 200
San Jose, CA 95112

## SUBMIT THIS NOTICE WITH REQUIRED DOCUMENT(S) AND KEEP A COPY OF THIS NOTICE AND SUPPORTING DOCUMENTS FOR YOUR RECORD

Applicant's Name:  Lin Chen                                    Date:  January 9, 2004

Refer to File #:  A95315518                                    Officer:  A O S / f j

A decision cannot be made until you submit the document(s) or information requested below. PLEASE MAIL the document(s) information to the above address within 87 days. Pursuant to 8 CFR 103.2(b)(8), you have 12 weeks from the date of this notice to comply. Failure to do so may result in the denial of your application.
Submit the following documents: *(All documents containing language other than English must be submitted with a full English Translation*

- [ ] Form I-130 Relative Alien Petition (Copy of original or completed duplicate no fee)
- [ ] Form I-693 Medical Examination AND Supplemental form to I-693 (all required Immunizations/Vaccinations)
- [ ] Form I-864 Affidavit of Support  - From petitioner and/or Co-Sponsor (NOTARIZED)
- [ ] Form G-325A Biographic Information
- [ ] Fingerprints Referral for ASC at SNJ / SALINAS on: _____
- [ ] Form I-601, Application for Waiver of Grounds of Excludability,  $195.00 Check/Money Order (payable to "INS") **AND** Statement of Extreme Hardship from Petitioner (health, financial consideration, education, personal consideration, special factors, etc.).
- [ ] Immigration specified color photos (3)
- [ ] Advance Parole (I-512) OR Copy of all foreign travel documents.
- [ ] Police clearances for **all jurisdictions** where you have **resided** for the **last 5 years.**
- [ ] Employment letter with company letterhead (business stationery) showing salary, start date, and position held) sponsor/and co-sponsor.   (In support of co-sponsor's Form I-864 Affidavit of Support)
- [ ] Proof of marital union (rental agreement, deeds, insurance policies, utility bills, bank/credit statements, tax returns, and other evidence of marital union, etc.).
- [ ] **Certified Final Court Dispositions AND Conviction Documents, or** evidence of expungement of record, or "No Record" found from court of your arrest (s): _____
- [ ] Non-Availability of document certified by civil authorities for _____
- [ ] Original and a Copy of registered birth certificate for _____
- [ ] Original and a Copy of registered marriage certificate between _____
- [x] Original and a Copy of registered FINAL divorce decree between    Mali Wu, Shan Cai with Guobing (ORIGINAL)
- [ ] Original and a Copy of registered death certificate of _____
- [ ] Two (2) affidavits regarding _____
- [ ] Copy  of Naturalization Certificate for OR U.S. passport of:   OR "Greencard"  OR U.S. Birth Certificate of Co-sponsor
- [ ] Complete copies of Income Tax Returns AND W-2 for    FEDERAL TAX RETURNS for last 3 years
- [ ] A statement from an officer of the bank or other financial institution in which you have deposits, including deposit/ withdrawal history for the last 12 months, and current balance of: _____
- [ ] Other _____

---

- [ ] *Your application for permanent resident is pending for fingerprint clearance. It will take        approximately 120 days to receive the fingerprint result. After 90 days of your fingerprint  taken, please send us a copy of this notice to the address above.*

---

- [x] *New Address (if you moved)*

*For* Warren Janssen, Officer in Charge

I-72 Notice                                                www.uscis.gov

Exhibit 3

# Exhibit 3

Exhibit 3

U.S Citizenship and Immigration Services - Case Status Service Online                                    Page 1 of 2



Services & Benefits    Immigration Forms    Laws & Regulations    About USCIS    Education & Resource    Press Room

[ Print This Page ]    [ Back ]

## U.S. Citizenship and Immigration Services
## San Jose CA Processing Dates
## Posted August 16, 2007

**Notice**:  U.S. Citizenship and Immigration Services (USCIS) has improved the reporting procedure for processing times of immigration benefit applications.  In the past, USCIS benefit processing reports indicated the specific type of applications or petitions that were being processed and the date the cases were received.  However, the date the case was received did not provide a clear indication of when USCIS expected to complete the case, nor did it provide a clear indication of USCIS' commitment to process cases within a certain cycle time.  It also did not align with the processing times and cycle times the agency reports in other contexts.

This improved reporting procedure is an effort to give our customers more accurate information that better reflects current processing time and USCIS service level commitments.  Effective immediately, when we are completing applications and petitions within our service level goals we will report that as the processing time.  For example, when our service level goal is to process a particular kind of case within six months, and if our processing time is six months or less, we will show a date consistent with our service level goal because that reflects our commitment.

When we are not meeting our service level goal, the date posted will reflect the filing date of cases that are being completed.  It should be noted that while in some instances reported processing dates may appear to have regressed due to this change, they do not reflect a lengthening of USCIS processing times, but simply the change in reporting.  Our goal is to provide accurate projections and thus give customers clear expectations as to what they can expect as a processing time.

**There are several important exceptions to the processing times shown below:**

- Case processing will be delayed if we must ask you for more evidence or information.
  If we ask for missing required initial evidence, count the processing time from when we receive that missing evidence.
- The case processing timeframe will start over if a customer doesn't appear for an interview or asks that it be rescheduled.

### What if I have a problem or have questions about a case?

We offer a variety of services after you file.  For example, for most kinds of cases you can <u>check the status of your case online</u>.

For more information about when and how to contact us, whether your case is outside our processing time or if there are other issues, please see our fact sheet –

U.S Citizenship and Immigration Services - Case Status Service Online                    Page 2 of 2

Case Services - How do I... know what kind of services are available to me after I file my application or petition?

One additional point about these projections. They are the time to complete processing and mail the actual notice and/or document. If you check case status online and see that your case has been approved, and you haven't yet received your approval notice or document in the mail, we ask that you wait thirty days from the approval date before contacting us. That is because it may take that long before it is returned to us as undeliverable. You can also print the case status online answer for your records.

District Office Processing Dates for **San Jose CA** Posted August 16, 2007

| Form | Form Name | Now Processing Cases with Receipt Notice Date of: |
|------|-----------|---------------------------------------------------|
| I-131 | Application for Travel Documents | May 15, 2007 |
| I-485 | Application to Register Permanent Residence or Adjust Status | February 13, 2007 |
| I-600 | Petition to Classify Orphan as an Immediate Relative | May 15, 2007 |
| I-600A | Application for Advance Processing of Orphan Petition | May 15, 2007 |
| I-765 | Application for Employment Authorization | May 29, 2007 |
| N-400 | Application for Naturalization | December 07, 2006 |
| N-600 | Application for Certification of Citizenship | January 25, 2007 |

Print This Page       Back

**08-29-2007 01:41 PM EDT**

Home    Contact Us    Privacy Policy    Website Policies    NoFEAR    Freedom Of Information Act    FirstGov

U.S. Department of Homeland Security

Exhibit 4

# Exhibit 4

Exhibit 4

## MESSAGE FROM THE OMBUDSMAN



The Citizenship and Immigration Services Ombudsman's 2007 Annual Report marks 46 months of cumulative analysis and recommendations since the establishment of the office. The Ombudsman's office is Congressionally-mandated to assist individuals and employers in resolving problems with the U.S. Citizenship and Immigration Services (USCIS) of the Department of Homeland Security (DHS) by advancing recommendations on improving USCIS services and operations. It is an independent DHS office that reports directly to the DHS Deputy Secretary with an annual report to Congress without prior review and comment by DHS or the executive branch, as directed by the Homeland Security Act of 2002.

The Ombudsman's first three annual reports focused on the systemic issues that caused delay in granting immigration benefits and customer service complaints. These reports identified pervasive and serious issues that were addressed in 28 formal recommendations directed at solving problems faced by individuals and employers in their interactions with USCIS. The USCIS Director and the Ombudsman generally agree on the identified problems and their need for priority attention, although the solutions proposed and those adopted by USCIS may differ.

Challenges still exist within USCIS. Customers continue to have difficulties with confusing forms and processes and many customers wait months, and perhaps years, for final adjudication of their cases. The Ombudsman will continue to assist individuals to receive lawful benefits in a timely, customer-friendly, secure, and efficient manner.

I want to thank DHS Secretary Michael Chertoff, Deputy Secretary Michael P. Jackson, former Secretary Tom Ridge, former Deputy Secretary Jim Loy, former Deputy Secretary Gordon England, USCIS Director Emilio Gonzalez, Deputy Director Jonathan "Jock" Scharfen, and former Director Eduardo Aguirre for their dedication to our mission of providing secure, efficient, and expeditious immigration services. I have been privileged to work with committed professionals in DHS, USCIS, and the Ombudsman's office.

The preparation of this annual report was accomplished by tireless efforts of a dedicated staff of professionals who spent many hundreds of hours reviewing and validating facts and figures, as well as drafting and editing the report. I thank them for assisting me in completing it and for their public service in addressing national security and customer service. I especially would like to thank Wendy Kamenshine who again this year skillfully managed this complicated project.

We have accomplished a great deal, but there is much more to do in the spirit of responsive government.

*Prakash Khatri*

Prakash Khatri
Citizenship & Immigration Services Ombudsman

## EXECUTIVE SUMMARY

This report, submitted pursuant to the Homeland Security Act of 2002 § 452, provides details on activities undertaken by the Ombudsman from June 1, 2006 through May 31, 2007.

The statutory mission of the Ombudsman is to:

- Assist individuals and employers in resolving problems with USCIS;

- Identify areas in which individuals and employers have problems in dealing with USCIS; and

- Propose changes to mitigate identified problems.

During the reporting period, the Ombudsman continued to provide assistance to USCIS customers, identify problems, and recommend solutions to systemic problems confronting USCIS. These recommendations focused on improving customer service and transparency, while enhancing security and efficiency. Information boxes in the report provide readers with: (1) USCIS best practices; (2) additional recommendations; (3) observations from the Ombudsman's trips to USCIS facilities; (4) customer comments from the Ombudsman's pilot teleconference program; and (5) descriptions of actual case problems.

### USCIS Transformation

Transformation of USCIS -- which encompasses IT modernization efforts, forms revision, and other initiatives to provide USCIS with world-class digital processing capability -- is vital to the agency's future success. However, USCIS has devoted considerable resources to various types of transformation since the 1990s with minimal progress. The success of USCIS' transformation efforts requires focus, resources, and credible performance measures to assess outcomes.

### Pervasive and Serious Problems

Pervasive and serious problems faced by USCIS and its customers include:

A.      **Complexity of the Immigration Process** – One of the most serious problems facing individuals and employers is the complexity of the immigration process. While the Immigration and Nationality Act is the principal statute governing immigration to the United States, there are myriad other laws, regulations, policies, and procedures that affect whether and in what manner a foreign national may enter the United States, seek temporary status, a green card, or U.S. citizenship. Many of the pervasive and serious problems detailed in this report are interconnected and stem from the complexity and opaque nature of the immigration rules and the agency administering them.

B.      **Backlogs and Pending Cases** – USCIS customers continue to face lengthy and costly waiting periods for benefits, but thanks to the dedication and leadership of staff in

support centers, field offices, and service centers, there has been a substantial reduction in the backlog. Unfortunately, the agency's redefinition of the backlog obscures the issue and raises questions about its backlog reduction efforts.

C.     **Processing Times** – On August 23, 2006, USCIS announced changes that would improve the reporting methodology for processing times of immigration benefit applications. The Ombudsman disagrees that this change provides better information and urges USCIS to return to the practice of providing the public with the actual processing time for each field office.

D.     **Customer Service** – During the reporting period, USCIS made important strides in customer service. USCIS increased the number of appointments available via INFOPASS and began two new contracts in the effort to improve its toll-free customer service line. Nevertheless, the Ombudsman continued to observe other areas where communication issues with customers persist: (1) limited customer access to USCIS immigration officers who know about individual cases to resolve an inquiry accurately and efficiently; (2) questionable accuracy of information provided by customer service representatives; and (3) the practice of providing minimal information in response to customer inquiries.

E.     **Untimely Processing and Systemic Problems with Employment-Based Green Card Applications** – USCIS' inability to process enough green card applications and accurately track employment-based green card applications has resulted in a perpetual backlog of employment-based green card applications and widespread issuance of interim benefits. This lack of accurate data also has resulted in the underutilization of statutorily limited visa numbers.

F.     **Name Checks and Other Security Checks** – FBI name checks, one of the security screening tools used by USCIS, continue to significantly delay adjudication of immigration benefits for many customers, hinder backlog reduction efforts, and may not achieve their intended national security objectives. FBI name checks may be the single biggest obstacle to the timely and efficient delivery of immigration benefits, and the problem of long-pending FBI name check cases worsened during the reporting period.

G.     **Interim Benefits** – The Ombudsman strongly supports efforts by USCIS to eliminate the need for interim benefits in favor of timely, efficient, and secure adjudication of the ultimate immigration benefit. Legitimate customers should not have to pay filing fees for interim benefits they would not need if the underlying petition were timely processed. Interim benefits also allow ineligible and fraudulent applicants to receive work authorization and travel documents because of processing delays.

H.     **Funding of USCIS** – Due to the congressional requirement that USCIS be self-funded from fees, USCIS may make decisions that compromise operational efficiency to ensure revenue flow. The manner in which USCIS obtains its funding affects every facet of USCIS operations, including the ability to: (1) implement new program and

processing initiatives; (2) begin information technology and other transformation efforts; and (3) plan for the future.

**I.      Lack of Standardization Across USCIS Business Processes** – The Ombudsman is encouraged by USCIS' attempts to foster standardization of adjudicative processes and decision-making, yet processing times and the quality of decisions between offices remain inconsistent.

**J.      Inefficient or Redundant Processes** – There are certain USCIS processing inefficiencies and redundancies that could be easily addressed and would make substantial improvements for customers.

**K.      Coordination and Communication** – Coordination and communication problems between USCIS field offices and service centers, USCIS headquarters and field offices, USCIS and stakeholders and other government agencies, and even among headquarters components continue to cause processing delays, inconsistency in adjudications, and costly inefficiencies.

**L.      Information Technology Issues** – The effective deployment of information technology systems to all service centers and field offices remained a significant challenge for USCIS.  Legacy agency systems are unable to communicate with one another, and USCIS continues to be a paper-based operation.

**M.      Staffing, Career Development, Training, and Strategic Workforce Planning and Recruiting** – During the reporting period, USCIS combined its human resources and training and career development components into a new office led by the agency's first Chief Human Capital Officer.  USCIS completed its first strategic workforce planning and integrated training effort, which addressed aspects of the staffing and training gaps identified in the Ombudsman's 2006 Annual Report.  Substantial workforce staffing and training challenges remain for USCIS.  The Ombudsman urges USCIS to implement the findings of the Strategic Workforce Plan.

**N.      Delay in Updating U.S. Citizenship Designation in Records** – In the past, some naturalized citizens could not apply for passports because naturalization could not be verified.  The Ombudsman understands that USCIS has corrected this problem and will continue to monitor it.

**O.      Green Cards Collected, Not Recorded, and Green Card Delivery Problems** – In the past, untimely and inaccurate updating of records resulted in major inconveniences for certain USCIS customers and misdirected green cards for others.  The Ombudsman will monitor the changes USCIS has implemented and is planning on these issues.

**Up-front Processing**

The Ombudsman strongly supports up-front processing of immigration benefits applications to enhance national security, improve customer service, and increase USCIS

efficiency.  Up-front processing changes current USCIS processing procedures by assuring that an agency official reviews and completes as many actionable items on a case as possible at the time USCIS accepts the application or petition.  During the reporting period, USCIS expanded up-front processing programs to two additional small field offices.  However, inadequate resources for transitioning to the new process and other circumstances have limited the success of the pilot programs at these two offices.

### Recommendations

This report includes summaries of the Ombudsman's formal recommendations for the 2007 reporting period, as well as those recommendations to which the Ombudsman received new USCIS responses.  Recommendations during the reporting period focused on notice to customers and stakeholders, transparency in agency programs, and improving Freedom of Information Act operations.

### Ombudsman Outreach

During the reporting period, the Ombudsman traveled to over 40 USCIS facilities, met with countless stakeholder organizations, and held numerous in-person and telephonic meetings with interested parties.  The Ombudsman urges USCIS to be a more transparent agency with better communication with its customers, and in this regard, the Ombudsman has sought to lead by example.

Key outreach initiatives include:

- **Teleconferences.** During the reporting period, the Ombudsman began a pilot teleconference series with customers and stakeholders to hear and address their comments and concerns on specific topics and regarding certain offices.

- **Trends Email.** The Ombudsman maintains an email account specifically for customers and stakeholders who have concerns about trends and systemic issues to suggest solutions.  The majority of correspondence forwarded to the Ombudsman's trends email pertains to adjudications delays due to FBI name checks.

- **Virtual Ombudsman's Office.** As an alternative to local Ombudsman offices, for which there are no budget requests or allocations for FY 08, the Ombudsman is working with the relevant DHS components to develop a "Virtual Ombudsman's Office." The Ombudsman expects this program to be operational and make services of the Ombudsman more easily available to individuals and employers across the country via the internet by FY 08.

- **Ombudsman's Priorities.** The reporting period priorities, posted on the Ombudsman's website, were: (1) Recommending Solutions to Systemic Issues that Continue to Cause Individual Case Problems; (2) Expanding Up-Front Processing Programs; (3) Addressing USCIS Fundamental Budget Issues; (4)

Reviewing Processing Delays Caused by USCIS Security Screening; and (5) Improving USCIS Customer Service and Communications.

### Case Problems

By statute, the Ombudsman receives and processes case problems to assist individuals and employers who experience difficulties with USCIS. The case problem resolution unit also helps identify systemic issues for the Ombudsman to recommend solutions. During the reporting period, the Ombudsman and USCIS refined communication processes to improve case problem resolution capability.

### Looking Forward

In 2007-2008, the Ombudsman will continue to identify areas in which individuals and employers have problems interfacing with USCIS, and to the extent possible, propose changes to mitigate identified problems. The Ombudsman will gather information and feedback from USCIS customers and stakeholders by continuing to conduct frequent site visits to USCIS facilities; meeting regularly with community, employer, and immigration law organizations; and expanding individual and employer access to the Ombudsman.

The Ombudsman will improve the process for resolving problems individuals and employers face in dealing with USCIS by establishing a Virtual Ombudsman's Office to provide for online case problem submission. Additionally, the Ombudsman will continue to initiate and expand activities to promote interagency cooperation and holistic approaches to immigration issues.

> *CASE PROBLEM*
>
> *In fall 2003, an applicant filed a green card application, which remained pending due to FBI name checks until spring 2007. During the course of the adjudication, the applicant was fingerprinted and applied for interim benefits several times. Although the applicant applied for most of the interim benefits in a timely manner, the filing of the last EAD was not timely, and the applicant had to end his employment. In correspondence to the Ombudsman in the winter of 2007, the applicant related that he is a cancer patient who no longer has income necessary to pay for treatments.*

In February 2007, USCIS made public the criteria for expedited treatment of FBI name checks. While this change should help with specific cases, the *status quo* for FBI name check completion is unacceptable from the standpoint of national security and immigration benefits processing.

### 3.    Value of the FBI Name Checks

The challenge for USCIS (and perhaps the challenge for DHS and the entire federal government) is to evaluate the value of maintaining the current FBI name check process relative to considerations of threat, vulnerability, and consequence. The Ombudsman agrees with the assessment of many case workers and supervisors at USCIS field offices and service centers that the FBI name check process has limited value to public safety or national security, especially because in almost every case the applicant is in the United States during the name check process, living or working without restriction.

The Ombudsman recommended in the 2006 Annual Report (at p. 25) that the FBI name check process be re-examined. Delays in the name check process actually prolong an individual's presence in the United States while the check is pending. In this sense, the current USCIS name check policy may increase the risk to national security by extending the time a potential criminal or terrorist remains in the country.

In its 2006 Annual Report Response (at p. 10), USCIS stated:

> Although these security checks may require a more lengthy processing time, USCIS believes that performing them is essential to identifying national security and public safety concerns that would not have been uncovered by other means . . . in, a few cases, the information obtained from the FBI through this process has reflected very significant issues and risks. FBI name checks disclose information to USCIS that is otherwise not available. Information contained in 39 [percent] of the FBI positive responses (letterhead memoranda) received in FY 06 was not contained in IBIS/TECS, USCIS' primary background check tool. . .. [A]lthough a heavy price is paid in inquiries, mandamus actions, and other forms of litigation, USCIS is committed to effective

background checks, and thus is committed to the FBI name check.
In fact, under the new fee rule currently under review, USCIS
proposes to dedicate more funds to the FBI name check process as
the FBI has indicated the fees they charge for these checks will
increase and additional staff will be added to the process. This
should help to speed up the name check process and reduce the
backlog significantly.

Use of the 39 percent positive response rate as referenced by USCIS to justify continuing
this program may exaggerate the value of the FBI name check. It is unclear how many of the
FBI name check "responses" also were revealed by one or more of the other security checks
conducted for the applications. To date, the Ombudsman has been unable to ascertain from
USCIS the total number of actual problem cases that the agency discovered exclusively as a
result of the FBI name check. The Ombudsman understands that most, if not all, of the problem
cases which would result in an eventual denial of benefits also can be revealed by the other more
efficient, automated criminal and security checks that USCIS initiates.

---

*COMMENTS FROM OMBUDSMAN'S TELECONFERENCE*

*One caller mentioned that USCIS does not schedule applicants for
interviews because security clearances are not yet completed. He suggested that
USCIS needs to look at the cost-benefit of doing these clearances. The caller
stated he is in the military and has a top secret clearance.* ▨

*Another caller suggested that information could be sent every "X" number
of months to the applicant or attorney that the application still is held up for
pending name checks, which would avert the many update requests.* ▨

---

#### 4. Possible Solutions to the FBI Name Check Delays

During this and previous reporting periods, the Ombudsman had numerous meetings with
USCIS leadership on FBI name checks and discussed a number of solutions to the name check
logjam.

##### a. Pre-Application Security Checks

A possible solution to the name check problem is pre-application security checks. USCIS
has not chosen to implement such a process, which would dramatically impact the agency's
revenue stream for a short period of time. Simultaneously, USCIS is failing to make basic
changes to its processing methodology to reduce fraud and ineligible applicants. Instead, USCIS
continues to substantially fund a process with questionable value. USCIS maintains that the
name check process is of value, but it remains unclear whether the process has added any
additional value over the security processes already in place.

**Figure 11: Ombudsman's Suggested Pre-Application Security Check Process**



1. May be performed in the United States or abroad.
2. Can include individuals applying for nonimmigrant visas or changes of status, individuals applying for immigrant status (adjustment or consular process), refugees, and naturalization applicants.
3. DHS/USCIS will collect and share data through an integrated case (person-based) management system. A component of this system will be an immigration case management system.

Case 5:07-cv-03147-RS    Document 9    Filed 08/30/2007    Page 50 of 52

Figure 11 outlines the security screening steps to clear an applicant prior to interview, where necessary, and for adjudication of the immigration benefits application. The applicant/petitioner would register intent and pay a fee to cover the costs of the process. Pre-application is more than a pre-screening that determines *prima facie* eligibility. It moves the case to an adjudicating officer who reviews the file and interviews the applicant, if necessary. Since all fingerprints, biometrics, security clearances, necessary documents, medical evaluation, financial support, and visa availability are cleared, the applicant can be processed to conclusion immediately after interview. A Clearance Report is documentary proof that the applicant successfully completed the pre-application process. This process would place biometrics capture and security screening in the hands of appropriate law enforcement/contract employees, trained in the pre-screening process, and the determination of eligibility for benefits in the hands of USCIS officers trained in immigration law.

The agency also should review the DHS resources available to assist in exploring options to solve the backlogged FBI name check process. A number of DHS law enforcement entities perform security checks similar to those performed by USCIS.

### b.    USCIS Background Check Service IT System for Tracking FBI Name Check Cases

USCIS' 2006 Annual Report Response (at p. 10) indicates that the agency's planned Background Check Service (BCS), a new IT system that will track the status of background and security checks for pending cases, was to be implemented in late April with deployment beginning in May 2007. As of this writing, the BCS is not yet deployed. Currently, USCIS has limited capability to produce reports detailing the status of long-pending FBI name check cases. In addition, USCIS systems do not automatically indicate when a delayed name check is complete and the case can be adjudicated. Often, this leads to a situation where the validity of other checks expire before USCIS reviews the case. Those other checks then need to be reinitiated, adding financial and time costs for applicants and USCIS. The Ombudsman fully supports the expeditious rollout of the BCS system.

### c.    A Risk-Based Approach to FBI Name Checks

Name checks do not differentiate whether the individual has been in the United States for many years or a few days, is from and/or has traveled frequently to a country designated as a State Sponsor of Terrorism, or is a member of the U.S. military. Many individuals subject to lengthy name checks are either already green card holders or have been issued Employment Authorization Documents (EADs). These documents allow them to receive Social Security cards and state drivers' licenses. Most green card applicants are also eligible to receive advance parole enabling them to travel outside the United States and return as long as their cases are pending, which can be for many years under the current process.

> **CASE PROBLEM**
>
> *In early 2006, the applicant applied for naturalization. USCIS informed the applicant that the application is pending due to the FBI name check. The applicant currently is a contract employee for a federal agency and was security screened prior to beginning that employment.*

> **CASE PROBLEM**
>
> *The applicant's green card application was filed in early 2004. The application remains pending due to the FBI name check. The applicant previously served as a security officer at a U.S. embassy and was subject to rigorous security screening for the position.*

In November 2006, Secretary Chertoff discussed a risk-based approach to homeland security threats, vulnerabilities, and consequences:

> [T]he core principle that animates what we do at DHS . . . is risk management. It is a recognition of the fact that management of risk is not elimination of risk. There is no elimination of risk in life, and anybody who promises every single person protection against every threat at every moment in every place in the country is making a false promise . . . . What we do have to do is identify and prioritize risks -- understanding the threat, the vulnerability and the consequence. And then we have to apply our resources in a cost-effective manner, using discipline and common sense in order to minimize the risk without imposing undue cost on our communities and our families.[43]

Despite Secretary Chertoff's continuing emphasis on risk management, USCIS performs FBI name checks without the benefit of risk management modeling. In recent visits to USCIS field offices, a number of leaders have questioned the usefulness of the FBI name checks citing some of the same concerns discussed here. The process is not working and consideration should be given to re-engineering it to include a risk-based approach to immigration screening and national security. The U.S. Government Accountability Office recently noted in a report that "[w]hile the Secretary of DHS has expressed a commitment to risk management, DHS has not

---

[43] DHS Secretary Michael Chertoff, Prepared Remarks at the 2006 Grants & Training National Conference, Washington, D.C. (Nov. 28, 2006); http://www.dhs.gov/xnews/speeches/sp_1164738645429.shtm (last visited June 3, 2007).

performed comprehensive risk assessments in . . . immigration and customs systems to guide resource allocation decisions."[44]

Every effort should be undertaken to identify and remove persons who pose threats to the United States, which would include rescinding immigration benefits after USCIS has granted them. It would be irresponsible for law enforcement entities to stop their investigation of a potential crime merely because the person who is the subject of their investigation has obtained a green card or U.S. citizenship. Similarly, it would be illogical to think that delaying issuance of a green card or U.S. citizenship will prevent a criminal from committing a crime. Considering the protection the FBI name check provides, the cost of government resources used, and mental and actual hardships to applicants and their families, USCIS should reassess the continuation of its policy to require FBI name checks in their current form.

> *RECOMMENDATION AR 2007 -- 06*
>
> *In addition to the Ombudsman's recommendation in the 2006 Annual Report, AR 2006 –04, the Ombudsman recommends that USCIS: (1) evaluate the value of the name check in its current format and establish a risk-based approach to screening for national security concerns; (2) work with the FBI to provide the necessary resources to perform name checks in a timely manner; and (3) provide greater transparency to customers by publishing monthly the number of long-pending FBI name check cases.*

## G.    Interim Benefits

The Ombudsman strongly supports efforts by USCIS to eliminate the need for interim benefits in favor of timely, efficient, and secure adjudication of the ultimate immigration benefit.

### 1.    Background

Generally, USCIS issues interim benefits – EADs and advance parole documents (international travel documents) – to individuals who have green card applications pending with the agency for over 90 days.[45] The Ombudsman is encouraged by constructive dialogue with USCIS during the reporting period that addresses funding and security issues related to the processing of interim benefits.

On May 30, 2007, USCIS established new filing fees for immigration benefits.[46] Under the new fee schedule, USCIS will charge a single fee for green card applications to include recovery of the processing costs for interim benefits. The Ombudsman supports this approach to

---

[44] U.S. Government Accountability Office Report "Homeland Security: Management and Programmatic Challenges Facing the Department of Homeland Security," GAO-07-398T at 2 (Feb. 2007); http://www.gao.gov/new.items/d07398t.pdf (last visited June 6, 2007).

[45] *See* 8 C.F.R. § 274a.13(d).

[46] *See* "Adjustment of the Immigration and Naturalization Benefit Application and Petition Fee Schedule," 72 Fed. Reg. 29,851 (May 30, 2007); *see also* section III.H.1.